IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JB&L AUTO SALES, INC., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 5:23-CV-74 (MTT)<br>)<br>)<br>)<br>)<br>) |

## ORDER

Plaintiff Atlantic Casualty Insurance Company moves for summary judgment, seeking a declaration that it does not owe a duty to defend or indemnify JB&L Auto Sales, Inc. for claims asserted against it by defendants Yolanda and Jamiha Gilbert in an underlying lawsuit.  Doc. 30.  The defendants are Atlantic's insured, JB&L; Yolanda and Jamiha Gilbert, who have sued JB&L for an incident they claim is covered by JB&L's policy; and Kyle Cowser,[1] who was driving the vehicle in which Jamiha was a passenger.  *Id*. at 1-2.  For the following reasons, Atlantic's motion (Doc. 30) is **GRANTED**.

### I. BACKGROUND[2]

Atlantic issued a Commercial Lines Policy (the "Policy") to JB&L "for the policy period of November 30, 2019 through November 30, 2020."  Docs. 30-2 ¶ 1; 34-3 ¶ 1; 35-2 ¶ 1.  JB&L is the only named insured.  Doc. 30-1 at 4.  Relevant here, the Policy

---

[1] Cowser is in default.  *See* Doc. 22.

[2] Unless otherwise stated, these facts are undisputed and are viewed in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

includes covered autos liability coverage, general liability coverage, and acts, errors, or omissions liability coverage, and has various exclusions and endorsements. Docs. 30-2 ¶¶ 15-22; 34-3 ¶¶ 15-22; 35-2 ¶¶ 15-22.

On July 20, 2020, Cowser, accompanied by Jamiha, purchased a vehicle from JB&L. Docs. 30-2 ¶¶ 4, 10; 34-3 ¶¶ 4, 10; 35-2 ¶¶ 4, 10. "[W]ithin minutes of leaving JB&L's property, the [vehicle] caught fire and resulted in [Jamiha] sustaining bodily injuries as she attempted to escape the burning vehicle." Docs. 30-2 ¶ 5; 34-3 ¶ 5; 35-2 ¶ 5.

On August 20, 2020, Jamiha's counsel informed JB&L of their representation of Jamiha "in the various personal injury claims arising out of an automobile fire that occurred on July 20, 2020" and requested "a copy of the declaration of coverage page or some other comparable proof of the amount of all liability insurance coverage applicable to [the] case." Doc. 6-9 at 2. JB&L contends that, after receiving this letter, "it provided verbal notice to its insurance agent … and the agent stated she would notify the insurance company. The manager of JB&L later received a telephone call from Atlantic stating its policy did not cover the incident." Doc. 34-3 ¶ 23. However, JB&L does not state when this telephone call took place.

On June 20, 2022, Jamiha's counsel sent a demand letter to JB&L. Doc. 6-8 at 7-8. In that letter, Jamiha's counsel alleged that "misleading representations … led to the purchase of the vehicle." *Id*. at 7.

Sometime in July 2022, JB&L provided written notice of the Gilberts' potential claim against it to Atlantic. Docs. 30-2 ¶ 23; 34-3 ¶ 23; 35-2 ¶ 23.

On July 12, 2022, Atlantic informed Jamiha's counsel that it had denied coverage to JB&L. Doc. 30-6 at 2. On July 18, 2022, Atlantic informed JB&L it was "unable to find coverage." Doc. 30-4 at 3. Because no lawsuit had been filed, Atlantic did not state whether it would defend JB&L—"As no suit has been filed against you to our knowledge, [Atlantic] is unable to state at this time if it will respond to any litigation associated with this claim, either for indemnification or defense."[3] *Id*. at 4.

On July 20, 2022, the Gilberts sued JB&L in Bibb County State Court. Doc. 6-1. In that underlying lawsuit, the Gilberts allege JB&L violated Georgia's Fair Business Practices Act of 1975 by "knowingly [making] false representations about the condition of the" vehicle and "fraudulently induc[ing] the purchase of the vehicle by failing to disclose the condition of the vehicle." *Id*. ¶¶ 3-4. On August 24, 2022, JB&L sent a demand letter to Atlantic, along with a copy of the underlying lawsuit. Doc. 34-1. On September 22, 2022, Atlantic informed JB&L it would afford JB&L a defense under a reservation of rights. Doc. 6-7 at 2-3.

Atlantic filed this declaratory judgment action against JB&L, the Gilberts, and Cowser on February 24, 2023.[4] Doc. 1. Cowser failed to appear in the case and the Clerk of Court entered default against him on May 23, 2023. *See* Doc. 22. On June 8, 2023, Atlantic moved for default judgment against Cowser. Doc. 24. The Court denied that motion without prejudice to avoid inconsistent judgments. Doc. 25. Atlantic now

---

[3] It is unclear why Atlantic told Jamiha's counsel it had denied coverage to JB&L prior to sending a declination of coverage to JB&L.

[4] In addition to its answer, JB&L filed a counterclaim for breach of contract against Atlantic. Doc. 10 at 12-14. JB&L voluntarily dismissed that claim. Doc. 21.

moves for summary judgment, seeking a declaration that it does not owe JB&L a duty to defend or indemnify.  Doc. 30.

## II. STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it 'must support its motion with credible evidence … that would entitle it to a directed verdict if not controverted at trial.'  In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party."  *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

In contrast, "[w]hen the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'"  *Four Parcels of Real Prop.*, 941 F.2d at 1437 (quoting *Celotex Corp.*, 477 U.S. at 323).  The moving party "simply may show ...  that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 1438 (cleaned up).  "Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial."

*Info. Sys. & Networks Corp.*, 281 F.3d at 1224-25 (citing *Celotex Corp.*, 477 U.S. at 324).[5]

In determining whether a genuine dispute of material fact exists, the Court "must avoid weighing conflicting evidence or making credibility determinations." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A material fact is any fact relevant or necessary to the outcome of the suit, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Furthermore, "[a]ll material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. L.R. 56.

### III. DISCUSSION

"[T]he insurer is obligated to defend where ... the allegations of the complaint against the insured are ambiguous or incomplete with respect to the issue of insurance coverage." *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 268 Ga. 564, 565, 490 S.E.2d 374, 376 (1997). "[I]t is only where the complaint sets forth true factual

---

[5] Under Georgia law, the insured has the burden to prove that it suffered a loss covered by the policy, that it complied with the conditions precedent under the policy, and that the insurer waived its right to raise a certain defense. *Rsrv. Life Ins. Co. v. Davis*, 224 Ga. 665, 667, 164 S.E.2d 132, 133 (1968); *Wolverine Ins. Co. v. Sorrough*, 122 Ga. App. 556, 560, 177 S.E.2d 819, 822 (1970); *Metropolitan Life Ins. Co. v. Smith*, 48 Ga. App. 245, 247, 172 S.E. 654, 656 (1934); *see also* 17A Steven Plitt et. al., *Couch on Insurance* § 254:11 (3d ed. 2022). However, the insurer bears the burden to prove a policy exclusion, exception, or other affirmative defense applies. *Rsrv. Life Ins. Co. v. Ayers*, 217 Ga. 206, 213, 121 S.E.2d 649, 654 (1961); *see also* 17A Steven Plitt et. al., *Couch on Insurance* § 254:12 (3d ed. 2022). Thus, JB&L has the burden to prove that the Policy covers the Gilberts' claims, that it provided timely notice, and that Atlantic waived its right to raise a notice defense; Atlantic has the burden to prove that any exclusion applies.

allegations showing no coverage that the suit is one for which liability insurance coverage is not afforded and for which the insurer need not provide a defense." *Id*. "Where the claim is one of potential coverage, doubt as to liability and [the] insurer's duty to defend should be resolved in favor of the insured." *Id*. (citation and internal quotation marks omitted). "Though the duty to defend and the duty to indemnify are independent obligations and should generally be analyzed separately, the absence of a duty to defend is dispositive of the duty to indemnify." *Travelers Indem. Co. of Connecticut v. Peachstate Auto Ins. Agency, Inc.*, 357 F. Supp. 3d 1259, 1264 (N.D. Ga. 2019) (citations omitted).

Moreover, "[i]nsurance is a matter of contract and the parties are bound by the terms of the policy." *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 221, 231 S.E.2d 245, 249 (1976). Under Georgia law, the interpretation of an insurance policy is generally "a question of law," to which courts apply the "ordinary rules of contract construction." O.C.G.A. § 13-2-1; *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 269 Ga. 326, 327, 498 S.E.2d 492, 494 (1998). "The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction." O.C.G.A. § 13-2-3.

"[U]nder the rules of contract construction, the policy is construed against [the insurer] as the drafter of the policy and any exclusions from coverage are strictly construed." *Old Republic Union Ins. Co. v. Floyd Beasley & Sons, Inc.*, 250 Ga. App. 673, 677, 551 S.E.2d 388, 392 (2001). "When the language of an insurance policy

defining the extent of the insurer's liability is unambiguous and capable of but one reasonable construction, the court must expound the contract as made by the parties." *Burnette v. Ga. Life & Health Ins. Co.*, 190 Ga. App. 485, 485, 379 S.E.2d 188, 189 (1989).  "Where a term of a policy of insurance is susceptible to two or more constructions, even when such multiple constructions are all logical and reasonable, such term is ambiguous and will be strictly construed against the insurer as the drafter and in favor of the insured."  *Ga. Farm Bureau Mut. Ins. Co. v. Meyers*, 249 Ga. App. 322, 324, 548 S.E.2d 67, 69 (2001); *see* O.C.G.A § 13-2-2(5).

Atlantic asserts it is entitled to summary judgment because JB&L failed to comply with the Policy's notice requirements and, even if it had, there is no coverage under the Policy.  Doc. 30.  The Court agrees.

## A. Notice

Atlantic argues it does not owe JB&L a duty to defend or indemnify because JB&L failed to provide "prompt" notice in compliance with the Policy.  Doc. 30 at 15-16. According to JB&L, there is a dispute as to whether it provided timely notice and, in any event, Atlantic "waived its right to raise [notice] as a coverage defense."  Doc. 34 at 7.

Policy requirements that an insured give appropriate notice of occurrences and suits arising from occurrences are conditions precedent to coverage.  *Plantation Pipe Line Co. v. Royal Indem. Co.*, 245 Ga. App. 23, 28, 537 S.E.2d 165, 169 (2000). "[W]hen the insured unreasonably fails to timely comply with the notice requirement, the insurer is not obligated to provide a defense or coverage."  *Forshee v. Emps. Mut. Cas. Co.*, 309 Ga. App. 621, 623, 711 S.E.2d 28, 31 (2011).  Determining whether an insured has timely complied with a notice requirement is circumstance specific; often turning on

whether the insured's excuse justifies the late notice.  *Gibson v. Dempsey*, 167 Ga. App. 23, 24-25, 306 S.E.2d 32, 33 (1983); *Kay-Lex Co. v. Essex Ins. Co.*, 286 Ga. App. 484, 488, 649 S.E.2d 602, 606 (2007) ("Absent some justification, failure to provide timely notice of an occurrence can defeat coverage under such a policy.").  Finally, there is no requirement that an insurer must show it was prejudiced from an insured's failure to give timely notice.  *Caldwell v. State Farm Fire & Cas. Ins. Co.*, 192 Ga. App. 419, 420, 385 S.E.2d 97, 99 (1989); *Se. Express Sys., Inc. v. S. Guar. Ins. Co. of Ga.*, 224 Ga. App. 697, 701, 482 S.E.2d 433, 436 (1997).

*1. Timely notice*

The Policy provides:

**2. Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
…
a. In the event of "accident", claim, "suit", offense, "loss" or "act, error or omission", we or our representative must receive prompt notice of the "accident", offense, "loss" or "act, error or omission".  Include:

(1) How, when and where the "accident", offense, "loss" or "act, error or omission" occurred;
(2) What the "act, error or omission" was;
(3) The "insured's" name and address; and
(4) To the extent possible, the names and addresses of:
    (a) Any injured persons and witnesses; or
    (b) Anyone who may suffer damages as a result of an "act, error or omission".

The requirement for giving notice of a claim, if not satisfied by the "insured" within 30 days of the date of the "accident", may be satisfied by an injured third party who, as the result of such "accident", has a claim against the "insured".  However, in this event, notice of a claim given by an injured third party must be mailed to us.

Doc. 30-1 at 67, 74. "'Accident' includes continuous or repeated exposure to the same conditions resulting in 'bodily injury[.]'" *Id*. at 70. Section II – general liability coverages provides that "'[b]odily injury' … will be deemed to have been known to have occurred at the earliest time when any 'insured' … [b]ecomes aware … that 'bodily injury' … has occurred or has begun to occur." *Id*. at 56.

The purchase of the subject vehicle and the subsequent fire involving Jamiha occurred on July 20, 2020. Docs. 6-1 ¶ 2; 30-2 ¶¶ 4-5, 10; 34-3 ¶¶ 4-5, 10. JB&L knew of the occurrence at least as early as August 20, 2020, when Jamiha's counsel informed JB&L that they represented Jamiha "in the various personal injury claims arising out of an automobile fire that occurred on July 20, 2020," provided JB&L an accident report, and requested "a copy of the declaration of coverage page or some other comparable proof of the amount of all liability insurance coverage application to this case." Docs. 6-9 at 2; 30-2 ¶ 23; 34-3 ¶ 23. However, based on the record, JB&L did not provide notice of the occurrence to Atlantic until July 2022—almost two years later.[6] Docs. 30-2 ¶ 23; 34-3 ¶ 23. Nor did the Gilberts provide any notice to Atlantic. Docs. 30-1 at 74; 30-2 ¶ 24; 35-2 ¶ 24.

JB&L argues it provided timely notice. Doc. 34 at 9. "The burden is on the insured to excuse [its] failure to perform any such unambiguous term of the contract," including notice. *Criterion Ins. Co. v. Horton*, 140 Ga. App. 750, 751, 231 S.E.2d 814, 815 (1976) (quoting *Godley v. N. River Ins. Co.*, 51 Ga. App. 242, 180 S.E. 385, 386 (1935)); *see also Pub. Nat'l Ins. Co. v. Wheat*, 100 Ga. App. 695, 702, 112 S.E.2d 194, 200 (1959) ("[T]he burden is on the [insured] to prove the giving of notice by the insured

---

[6] No party filed a copy of this notice.

in compliance with the policy provisions."). JB&L claims that its manager received a phone call from an Atlantic representative after JB&L notified its insurance agent of the accident, who then, according to JB&L, notified Atlantic. Doc. 34 at 9. But JB&L does not state *when* it notified its agent, *when* its agent notified Atlantic, or *when* Atlantic called JB&L's manager. *See Stonewall Ins. Co. v. Farone*, 129 Ga. App. 471, 474, 199 S.E.2d 852, 855 (1973) ("[I]t makes no difference who gives the notice, so long as a reasonable and timely notice is given [to] the company."). JB&L merely cites an interrogatory response which also does not state when notice was given.[7] Doc. 34 at 9 (citing Doc. 34-2 ¶ 6).

Accordingly, JB&L has provided no evidence that creates a dispute of fact as to whether it provided prompt notice and its two-year, unjustified delay is unreasonable as a matter of law. *See Allstate Ins. Co. v. Walker*, 254 Ga. App. 315, 316, 562 S.E.2d 267, 268 (2002) ("An unexcused significant delay in notifying an insurer about an incident or lawsuit … may be unreasonable as a matter of law."); *Royer v. Murphy*, 277 Ga. App. 150, 151, 625 S.E.2d 544, 545 (2006) ("As the Supreme Court of Georgia as well as this Court have held in like circumstances, [the insured's] failure to notify the insurer here of the accident for almost two years amounted to an unreasonable delay as a matter of law."); *Se. Express Sys., Inc.*, 224 Ga. App. at 701, 482 S.E.2d at 436 ("A

---

[7] The interrogatory response states JB&L called the Dozier law firm "upon receipt of the August 20, 2020 letter." Doc. 34-2 ¶ 6. The response does not state, directly or indirectly, when the subsequent communications took place. *Id*. It further states that the agent told JB&L "she would notify insurance company." *Id*. JB&L did not file a declaration or affidavit from the agent verifying JB&L's hearsay account of the agent's statement. Finally, JB&L does not argue it satisfied the Policy's notice requirement when it gave notice to its agent. Nor could it. It is a well-established principle under Georgia law that "[i]ndependent insurance agents or brokers are generally considered the agent of the insured, not the insurer" and, thus, absent some type of authority, notice to an insured's agent is not notice to the insurer. *Se. Express Sys., Inc.* 224 Ga. App. at 700, 482 S.E.2d at 435; *Kay-Lex Co.*, 286 Ga. App. at 489, 649 S.E.2d at 607.

delay in providing notice of a claim for eight months was unreasonable as a matter of law."); *Bituminous Cas. Corp. v. J.B. Forrest & Sons, Inc.*, 132 Ga. App. 714, 716-17, 209 S.E.2d 6, 8-9 (1974) (unreasonable four-month delay); *Caldwell*, 192 Ga. App. at 420, 385 S.E.2d at 99-100 (unreasonable six-month delay).

   *2. Waiver*

JB&L argues that even if it failed to comply with the Policy's notice requirements, Atlantic waived its right to raise a notice defense.  Doc. 34 at 7-11.  In support of this argument, JB&L cites *Hoover v. Maxum Indemnity Company* for the principle that "[a]n insurer cannot both deny a claim outright and attempt to reserve the right to assert a different defense in the future."[8]  Doc. 34 at 7; 291 Ga. 402, 405, 730 S.E.2d 413, 416 (2012).  Thus, if an insurer does not identify a particular coverage defense in its reservation of rights, it generally cannot later raise that defense.

Because Atlantic, in its July 18, 2022 letter to JB&L, declined to provide coverage for reasons other than notice, JB&L argues Atlantic waived that defense.  Doc. 34 at 8-9.  However, Atlantic's July 18, 2022 letter was not a reservation of rights.  "A reservation of rights is a term of art in insurance vernacular and is designed to allow an insurer to *provide a defense to its insured* while still preserving the option of litigating and ultimately denying coverage."  *Hoover*, 291 Ga. at 405, 730 S.E.2d at 416 (emphasis added).  When Atlantic sent the July 18, 2022 letter, there was no lawsuit to defend; importantly, its July 18, 2022 letter specifically stated:

---

[8] JB&L also cites *Browder v. Aetna Life Insurance Company*.  Doc. 34 at 7; 126 Ga. App. 140, 190 S.E.2d 110 (1972).  However, *Browder* was a disability coverage case concerning "an ultimate denial of liability." 126 Ga. App. at 144, 190 S.E.2d at 112.  Here, Atlantic's July 18, 2022 letter was not an "ultimate denial of liability."  While Atlantic found no basis for coverage at the time, it stated its position could change. Doc. 30-4 at 3-4 ("Please note that new or additional allegations and/or facts beyond those presented to [Atlantic] and summarized briefly in this letter could change [Atlantic]'s position.").

-11-

> As no suit has been filed against you to our knowledge, [Atlantic] is unable to state at this time if it will respond to any litigation associated with this claim, either for indemnification or defense.

Doc. 30-4 at 4. Moreover, once JB&L notified Atlantic of the Gilberts' lawsuit, Atlantic did exactly what it was supposed to do—it "enter[ed] upon a defense under a reservation of rights and then proceed[ed] to seek a declaratory judgment in its favor." Doc. 6-7; *Richmond*, 140 Ga. App. at 217, 231 S.E.2d at 247; *Hoover*, 291 Ga. at 405, 730 S.E.2d at 417; *First Acceptance Ins. Co. of Ga. v. Watts*, 899 S.E.2d 849, 852-53 (Ga. Ct. App. 2024); *Am. Safety Indem. Co. v. Sto Corp.*, 342 Ga. App. 263, 268, 802 S.E.2d 448, 453 (2017). There is no contention that Atlantic's reservation of rights letter failed to preserve all relevant policy defenses, including the absence of timely notice. *See* Doc. 6-7 at 10, 14-15.

Because the record shows that JB&L failed to timely comply with the Policy's notice requirements, Atlantic has no duty to defend or indemnify JB&L.

**B. Coverage**

Even if JB&L had provided timely notice, the Policy provides no coverage for the Gilberts' claims.

*1. Section III – Acts, Errors, or Omissions Liability Coverages*

In their complaint, the Gilberts allege that JB&L violated Georgia's Fair Business Practices Act when it "fraudulently induced the purchase of the vehicle by failing to disclose the condition of the vehicle" and "knowingly made false representations about the condition of the" vehicle. Doc. 6-1 ¶¶ 3-4. The only conceivable coverage under the Policy for these claims is in "Section III – Acts, Errors or Omissions," which provides coverage for "any 'act, error or omission' of the 'insured' … arising out of the conduct of [its] 'auto dealer operations.'" Doc. 30-1 at 64.

-12-

For two reasons, the conduct alleged by the Gilberts does not fall within the Policy's definition of "act, error, or omission." Doc. 30-1 at 64. First, that definition limits coverage to "negligent" acts, errors, and omissions, and the Gilberts' fraud and "knowing" false representation claims are not based upon negligent conduct. Docs. 6-1; 30-1 at 70. Second, the definition limits coverage to *specific* negligent acts, errors, or omissions, namely those "committed by an 'insured' in the course of [its] 'auto dealer operations' arising" out of (1) a failure to comply with credit or lease disclosure laws, (2) a failure to comply with odometer mileage disclosure laws, (3) the "'insured's' capacity as an insurance agent or broker," or (4) "a defect in title in connection with the sale or lease of an 'auto' in your 'auto dealer operations.'" Doc. 30-1 at 70. The Gilberts do not allege JB&L's acts, errors, or omissions arose out of any such conduct. And even if the Gilberts' claims could somehow fall under the definition, the Policy excludes coverage for "fraudulent," "dishonest," or "intentional" acts, errors, or omissions. *Id*. at 65.

Accordingly, there is no coverage under section III.

*2. Section I.D. – Covered Autos Liability Coverage and Section II – General Liability Coverages*

JB&L argues there is coverage for the Gilberts' "negligence" claim under sections I.D. and II of the Policy and coverage for the Gilberts' fraud and false representation claims under section II. Doc. 34 at 3-7. The Gilberts also argue there is coverage for the Gilberts' "negligence" claim under section II. Doc. 35-1 at 5.

Section I.D. – Covered Autos Liability Coverage provides:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos".

Doc. 30-1 at 47.  Section II – General Liability Coverages provides:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident", and resulting from your "auto dealer operations" other than the ownership, maintenance or use of "autos".

*Id*. at 56.

First, any argument regarding coverage for a negligence claim is meritless. Sections I.D. and II provide coverage for "bodily injury" or "property damage" *only* caused by an "accident."  Doc. 30-1 at 47, 56.  Presumably, JB&L and the Gilberts argue coverage under these sections because "negligence" generally involves an "accident."  But there is no negligence claim in the underlying lawsuit.  See Doc. 6-1. Although the Gilberts allege that Jamiha's injuries were "a proximate and foreseeable result of [JB&L]'s negligence" and that they "have a cause of action against [JB&L] for negligence," the Gilberts do not allege a negligence claim and their factual allegations do not allege negligence.  *Id*. ¶¶ 5, 8.  Rather, they allege JB&L violated Georgia's Fair Business Practices Act of 1975 by "knowingly [making] false representations about the condition of the" vehicle and "fraudulently induc[ing] the purchase of the vehicle by failing to disclose the condition of the vehicle."  *Id*. ¶¶ 3-4.  And a claim for fraud is inconsistent "with the notion of [an] 'accident.'"  *Taylor Morrison Svcs., Inc. v. HDI-Gerling Am. Ins. Co.*, 293 Ga. 456, 466, 746 S.E.2d 587, 595 (2013) ("In most circumstances, a claim for fraud—at least as we know 'fraud' in the law of Georgia—will prove incompatible with the notion of 'accident.'").

Second, the Policy excludes coverage under sections I.D. and II for JB&L's intentional conduct—the type of conduct upon which the Gilberts' complaint is based. Doc. 30-1 at 49, 57.

-14-

Third, coverage under either section is excluded pursuant to the Policy's "transfer of ownership" exclusion, which provides:

> This insurance does not apply to any claim, loss, costs or expense for "bodily injury", "property damage" or physical damage to any covered "auto" after an auto held for sale has been transferred to the customer. The transfer of ownership occurs when possession of the covered "auto" has been surrendered to the customer, or relinquished to a third party transporter or transportation company, regardless of the time the title transfer is processed.

*Id*. at 40. "JB&L does not dispute that title to the subject vehicle transferred to Cowser when the vehicle was delivered to him." Doc. 34 at 6. And the Gilberts' claims against JB&L concern "bodily injury" that allegedly occurred after the vehicle was transferred to Cowser. Docs. 30-2 ¶ 5; 34-3 ¶ 5; 35-2 ¶ 5.

Accordingly, even if JB&L had provided proper notice, the Policy does not provide coverage for the Gilberts' claims and therefore, Atlantic is not obligated to defend or indemnify JB&L.

### IV. CONCLUSION

For the foregoing reasons, Atlantic has no duty to defend or indemnify JB&L and its motion for summary judgment (Doc. 30) is **GRANTED**.

**SO ORDERED**, this 15th day of May, 2024.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT